UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOSHUA D. LOVE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:24-cv-00365-JMS-MKK |
| | ) |
| DAVID LEITZ, *C/O*, T. LEFFLER, *L.T.*, MADISON PASSMORE, *Grievance Specialist*, MICHAEL ELLIS, *Warden or Designee Appeal Approval*, A. ADAMS, *C/O*, FLEETWOOD, *C/O*, RIORDAN, *C/O*, EDWARDS, *C/O*, EMILY, *Nurse*, and SIMMERMAN, *Sgt.*, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

### ORDER GRANTING DEFENDANT EMILY ENRIQUEZ, R.N.'S MOTION FOR SUMMARY JUDGMENT

*Pro se* Plaintiff Joshua Love is incarcerated at Wabash Valley Correctional Facility ("WVCF") and alleges that Defendants Correctional Officer David Leitz, Lieutenant T. Leffler, Grievance Specialist Madison Passmore, Warden Michael Ellis, Correctional Officer A. Adams, Correctional Officer Fleetwood, Correctional Officer Riordan, Correctional Officer Edwards, Nurse Emily, and Sgt. Simmerman (all employees at WVCF) violated his constitutional rights during various incidents that followed Mr. Love filing a grievance against Sgt. Simmerman. Mr. Love asserts: (1) First Amendment claims against Correctional Officer Leitz, Correctional Officer Riordan, Correctional Officer Edwards, and Sgt. Simmerman; and (2) Eighth Amendment claims against Correctional Officer Leitz, Correctional Officer Adams, Correctional Officer Fleetwood, Nurse Emily, Lt. Leffler, Ms. Passmore, and Mr. Ellis.[1] [*See* Filing No. 23.] Nurse Emily – who

---

[1] The Court screened Mr. Love's Complaint pursuant to 28 U.S.C. § 1915A. [Filing No. 23.]

1

has identified herself as Emily Enriquez[2] – has filed a Motion for Summary Judgment arguing that Mr. Love did not exhaust his administrative remedies as to his claim against her. [Filing No. 44.] The motion is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can

---

[2] The **CLERK** is **DIRECTED** to update the docket to change the name of Defendant "Emily, Nurse" to "Emily Enriquez, Nurse."

result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## FACTUAL BACKGROUND

The Court sets forth only the facts relevant to whether Mr. Love exhausted his administrative remedies as to claims against Nurse Enriquez – the only issue raised in the Motion for Summary Judgment.

### A.     The Grievance Procedure

The Indiana Department of Correction ("IDOC") has an "Offender Grievance Process" within its Manual of Policies and Procedures, which became effective on September 1, 2020. [Filing No. 45-1; Filing No. 45-6 at 2.][3]  The Offender Grievance Process "provide[s] a process where offenders committed to [IDOC] may resolve concerns and complaints relating to their conditions of confinement." [Filing No. 45-1 at 1.] It provides an opportunity for the facility to investigate and respond to issues grieved by offenders in a prompt and effective manner. [Filing No. 45-6 at 2.]

Offenders may use various state forms to communicate with staff regarding their medical needs or complaints, including a "Request for Healthcare" form and a "Request for Interview"

---

[3] The Court notes that Nurse Enriquez failed to comply with the Court's Practices and Procedures – available on the Court's website – which explicitly provide that, when citing to electronically filed exhibits, parties must "cite to the docket number, the attachment number (if any), and the applicable .pdf page as it appears on the docket information located at the top of the filed document." https://www.insd.uscourts.gov/content/judge-jane-e-magnus-stinson. Additionally, Nurse Enriquez's brief in support of her Motion for Summary Judgment cites repeatedly to "Ex. 7," but there is no Exhibit 7 on the docket. While the Court does not have a duty to "scour the record" for evidence that might be relevant, *Grant,* 870 F.3d at 573-74, it has determined that citations to Exhibit 7 actually refer to Exhibit 6. Failure to utilize the correct citation form and citation errors have made the Court's review of the evidence unnecessarily cumbersome. Counsel is cautioned to ensure that citations to the record are correct and is reminded that the Practices and Procedures are not optional and must be followed in this case and in all other cases going forward.

form. [Filing No. 45-6 at 5.] But these forms are not substitutes for official grievance forms or for completing the grievance process and IDOC recognizes only one grievance process. [Filing No. 45-1 at 3; Filing No. 45-6 at 5.] The Offender Grievance Process is the only administrative remedy officially recognized by IDOC for resolution of offenders' grievable issues. [Filing No. 45-1 at 3.] Claims regarding staff treatment and medical care are matters that are appropriate for the Offender Grievance Process. [Filing No. 45-1 at 3.] Grievances are categorized by type – *e.g.*, "medical treatment," "facility operations," or "staff complaints." [*See, e.g.*, Filing No. 45-2.] Grievances may only relate to one event or issue. [Filing No. 45-1 at 9.]

Offenders are provided with a copy of the Offender Grievance Process by their facility when they are admitted and during an orientation phase, as well as upon transfer to any IDOC facility. [Filing No. 45-1 at 7-8.] IDOC staff ensures that each offender is made aware of the Offender Grievance Process and knows that they may obtain access to a copy of it. [Filing No. 45-1 at 7; Filing No. 45-6 at 2.]

The Offender Grievance Process consists of three steps: (1) a formal attempt to solve a problem or concern at the institution level; (2) a written appeal to the Warden; and (3) a written appeal to the Department Grievance Manager. [Filing No. 45-1 at 3; Filing No. 45-6 at 2.] Step One begins when the offender submits a completed State Form 45471 (Offender Grievance) to the Offender Grievance Specialist within ten business days from the date of the incident giving rise to the complaint. [Filing No. 45-1 at 9.] The Offender Grievance Specialist must then either return an unacceptable form or provide a receipt for an accepted form within ten business days of receipt of the Offender Grievance form. [Filing No. 45-1 at 9-10.] If the grievance is rejected during screening, it is returned to the offender along with State Form 45475, "Return of Grievance,"

indicating the reason it was rejected and permitting the offender to resubmit a corrected grievance within five business days.  [Filing No. 45-1 at 10.]

Once an adequate Offender Grievance form is received, the Offender Grievance Specialist files it, assigns the grievance a case number, and provides a receipt for the grievance to the offender.  [Filing No. 45-1 at 10.]  Within ten business days of an offender's medical grievance, the facility staff is to investigate the grievance, prepare a written response to the offender's medical grievance, and forward the response to the respective Quality Assurance Manager for verification and approval.  [Filing No. 45-1 at 11.]  If the written response is approved by the respective Quality Assurance Manager, it is forwarded to the Offender Grievance Specialist.  [Filing No. 45-1 at 11.]  Upon receipt of the grievance response from the Offender Grievance Specialist, the offender is to review the response and determine whether the formal response adequately addresses the matter in the grievance.  [Filing No. 45-1 at 12.]

An offender is permitted to proceed to Step Two and appeal the response to the Warden if the offender disagrees with the formal response at the institution level.  [Filing No. 45-1 at 12.]  The offender may appeal the response by completing State Form 45473, "Grievance Appeal."  [Filing No. 45-1 at 12.]  The completed Grievance Appeal form and any additional information must be submitted to the Offender Grievance Specialist within five business days after the date of the grievance response.  [Filing No. 45-1 at 12.]  A response from the Warden is to be completed within ten business days of receipt of the appeal.  [Filing No. 45-1 at 13.]

If, after receipt of the appeal response, the offender is still dissatisfied, he or she may escalate the complaint to Step Three and appeal to the Department Offender Grievance Manager.  [Filing No. 45-1 at 13.]  If the offender wants to appeal the Warden's response, the offender must check the "Disagree" box, sign, date, and re-submit the completed State Form 45473, "Offender

5

Grievance Appeal," and any additional, pertinent documents, to the Offender Grievance Specialist within five business days of the Warden's appeal response. [Filing No. 45-1 at 13.] The IDOC Offender Grievance Manager works in conjunction with the Chief Medical Officer or a designee to investigate a medical grievance appeal and submit a response to the appeal within ten business days from the date of receipt. [Filing No. 45-1 at 13.] If no appeal response is received after ten business days, the appeal is considered denied and the Offender Grievance Process is over. [Filing No. 45-1 at 13.]

An offender has not fully utilized or exhausted the Offender Grievance Process until he or she timely completes all three steps of the process and receives a response from the Offender Grievance Manager or the time for response elapses. [Filing No. 45-6 at 2.] Exhaustion of the grievance procedure requires that the inmate meet all applicable time limits. [Filing No. 45-6 at 2.]

### B. Mr. Love's Grievances

#### 1. April 25, 2024 Grievance

Mr. Love submitted Offender Grievance # 24-177591 on April 25, 2024, in which he stated:

> Tonight I received a signed [Health Care Request Form ("HCRF")] (HCRF #524940) dated for 4-19-24 with a signature that[']s not legible w/ a response (seen by MD 4-19-24.) However this is true I was seen by MD that day, but when I attempted to address the issue stated on the HCRF, which is I needed to see a Dr to follow up with some medical issues that's persisted since the 3-29-24 excessive use of force (by Sgt. Simmerman & Sgt. Angeles), where after already being secured in cuffs Sgt. Simmerman struck me in the right side of the head approx 4 to 5 times with a closed fist, which caused some bruising and swelling, and since then I've been experiencing severe headaches that are so intense it feels like gunshots going off in my head! Anyway, during the MD visit on 4-19-24, he was addressing my hunger strike issue and not being able to keep food down, once I came off the hunger strike. The MD told me I would have to put in a HCRF to address my medical concerns w/ that issue, so I said okay b/c I knew I had already submitted the HCRF on 4-16-24.

[Filing No. 45-3 at 3.] Mr. Love re-submitted Grievance # 24-177591 on May 7, 2024, identifying the doctor he saw on April 19, 2024 as Dr. Byrd. [Filing No. 55 at 15.] His grievance was denied, as was his subsequent appeal of the denial. [Filing No. 55 at 17-19.]

       2.     *May 1, 2024 Grievance*

On May 1, 2024, Mr. Love submitted Offender Grievance # 24-178308, in which he stated:

> [D]uring the date & approx. time listed above, Nurse Heather came to my cell front for med pass. When I attempted to report to her and show her physical injuries on both my left and right [wrists] that occurred earlier this morning after excessive force was used, RN Heather blew me off by saying ("I'm not here for that, plus this officer…said you'll live[,] no need for medical.") RN Heather would not [ac]knowledge my need for medical treatment, when it was obvious that both [wrists] are swelling and bleeding from the cuts from when the handcuffs dug into the skin from such force. It's policy and procedure for any I.I. to be seen by medical after any use of force by staff. There is no reason why I should have been denied medical treatment, unless someone is trying to hide or cover up something. I have already submitted a HCRF, see HCRF #586883.

[Filing No. 45-4 at 4.] Mr. Love eventually appealed the denial of this grievance, and his appeal was denied by the Warden or his designee and by the IDOC Offender Grievance Manager. [Filing No. 55 at 27-32.]

       3.     *June 23, 2024 Grievance*

Mr. Love submitted Offender Grievance # 24-182091 on June 23, 2024, in which he stated:

> On 6-23-24 at approx. 6:30 AM H-Bracket C/O D. Leitz purposely poured hot coffee onto my right hand while I had it on my coffee cup to hold the cup steady on the cuff-port. As C/O D. Leitz went to walk off he stated, ("Now griev[e] that you [n****r] bitch.") I told C/O Leitz I'd be sure to do so, and mention the fact that you (he) just committed battery – and continuously retaliate against me for my complaints. I have put [WVCF] staff on notice by way of grievances and appeals, I've sent out request slip and/or letters to Lts. and Capts. And yet and still they've continued to place me in harm[']s way…. HCRF # 551415 – showed nurse Emily during med pass 9:50 pm.
>
> 1) Stop all and any acts of retaliation by c/o D. Leitz.
>
> 2) Not be placed in harm[']s way any more.

3) Not inflict unwanted pain/suffering.

4) For the date & time/location – preserve surveillance video recording of the incident in its entirely to substantiate claim.

[Filing No. 55 at 40.] This grievance was treated as a complaint against Correctional Officer Leitz for causing injury due to pouring hot coffee on Mr. Love. [Filing No. 45-2 at p. 3.] It was not treated as a medical grievance and there are no logged grievances related to medical treatment for the incident with Correctional Officer Leitz. [Filing No. 45-2 at p. 3.]

Mr. Love eventually appealed the denial of this grievance on July 3, 2024. [Filing No. 55 at 42.] In his appeal, he complained regarding Correctional Officer Leitz's actions, not receiving medical attention for a burn on his hand from the hot coffee, and being ignored after repeatedly requesting that he be kept separate from Correctional Officer Leitz for his safety. [Filing No. 55 at 43.] The Warden issued a denial of Mr. Love's appeal on July 18, 2024, Mr. Love filed a second-level appeal on July 24, 2024, and the Grievance Manager subsequently denied his appeal. [Filing No. 55 at 45-46.]

    4.    *July 2, 2024 Grievance*

On July 2, 2024, Mr. Love submitted Offender Grievance # 24-183283. [Filing No. 45-5.] On the Offender Grievance form, he stated:

> On 7-2-24 I received a HCRF (HCRF #551416) in my mail bag. I noticed the bottom part missing that[']s used to charge people for medical services. I checked the…app on my tablet and seen I was charged $5.00 for medical co-pay for WV551416. Attached w/ this grievance is my original yellow copy I said HCRF that shows I was only sent a written response by Nurse Jodie Scott dates for 6/29/24. I was never pulled out the cell and seen by any medical staff on the 29th of June, so I don't know why any money was removed from my account for medical co-pay. This is a over charge by medical/business office. I would like for my $ to be put back ASAP!

[Filing No. 45-5 at 4.] In the space on the Offender Grievance form asking the offender to "[s]tate the relief you are seeking," Mr. Love wrote: "Place my money back on my account." [Filing No.

8

45-5 at 4.] He eventually appealed the denial of this grievance, and his appeal was denied (although the denial noted that he would "be receiving [his] refund"). [Filing No. 55 at 47-48.]

    **C.    The Lawsuit**

Mr. Love initiated this litigation on July 19, 2024. [Filing No. 1.] The Court screened his Complaint pursuant to 28 U.S.C. § 1915A, and found that an Eighth Amendment claim against Nurse Enriquez would proceed related to allegations that after Correctional Officer Leitz poured hot coffee on Mr. Love, he requested medical treatment from Nurse Enriquez during medical call the same day and despite telling Mr. Love that she would bring him some ice, "she never did" and she did not "pull [Mr. Love] out [of] his cell concerning [his] injury." [Filing No. 1 at 10; Filing No. 23 at 3-4.] Nurse Enriquez has now filed a Motion for Summary Judgment, arguing that Mr. Love did not exhaust his administrative remedies as to his Eighth Amendment claim against her. [Filing No. 44.]

## III.
### DISCUSSION

In support of her Motion for Summary Judgment, Nurse Enriquez argues that Mr. Love has the burden of showing that he exhausted his administrative remedies and he has not done so. [Filing No. 46 at 8-11.] She asserts that his grievance history "demonstrates that he was quite familiar with the Offender Grievance Process," and even admitted in his Compliant that he was in the process of exhausting his administrative remedies. [Filing No. 46 at 10.] Nurse Enriquez argues that Mr. Love did not file a grievance related to medical treatment for the burn he received on June 23, 2024 and that the grievance he submitted related to that incident "was a staff complaint against [C]orrectional [O]fficer Leitz and was not directed to the medical department." [Filing No. 46 at 10.] Nurse Enriquez also argues that the grievance Mr. Love filed against Correctional Officer Leitz was not fully exhausted prior to filing the lawsuit in any event, noting

9

that Mr. Love "does not allege that he received a first-level appeal response or that he filed a second-level appeal prior to filing this lawsuit." [Filing No. 46 at 10.]

In response to the Motion for Summary Judgment, Mr. Love filed a Declaration with numerous exhibits attached. [Filing No. 55.] In his Declaration, he acknowledges that he "has not offered evidence suggesting that he filed a grievance at all," that "[a]ny grievance [he] has filed regarding the incident was not fully exhausted before filing suit," that he "has offered no evidence to the contrary or explanation for his failure to comply with administrative remedy available to him," that he "has improperly sought relief from this Court without having met the condition precedent imposed by the PLR Act," and that "his claim under 42 U.S.C. Subsection 1983 cannot succeed as a matter of law." [Filing No. 55 at 1.] He also states in his Declaration, however, that he filed a grievance and appeal, but that the facility did not "[give] him a form to continue…, so the access and availability [were] now being exhausted." [Filing No. 55 at 1.] Finally, he states that "[t]he facility forbids, the excess use of grievances, so [Nurse Enriquez] was included in the overall process," and that he "exhausted every remedy that was available to him under facility circumstances." [Filing No. 55 at 1.] Mr. Love submits the grievances and appeals that the Court has outlined above, along with the IDOC Manual of Policies and Procedures, as exhibits. [Filing No. 55 at 3-65.]

In her reply, Nurse Enriquez argues that the only grievance that could possibly relate to Mr. Love's Eighth Amendment claim against her is Grievance # 182091 filed on June 23, 2024, wherein Mr. Love mentions "nurse Emily" in passing. [Filing No. 56 at 3.] She argues that Grievance # 24-177591 and Grievance # 24-178308 were filed before the incident that is the subject of Mr. Love's Complaint, so cannot form the basis of an argument that Mr. Love exhausted his administrative remedies. [Filing No. 56 at 1-2.] Nurse Enriquez argues further

10

that Grievance # 24-183283 relates to Mr. Love being charged a medical co-pay, and not to any actions of Nurse Enriquez. [Filing No. 56 at 2-3.] As to Grievance # 182091, Nurse Enriquez asserts that although Mr. Love referred to her in the grievance, it was "in passing" and "is best read as includ[ing] her as a potential witness to his injury…[and] not the medical care that he received subsequently." [Filing No. 56 at 3.] She also contends that even if Mr. Love had complained regarding medical treatment that she provided, he filed this lawsuit five days before submitting his second level appeal so had not fully exhausted his administrative remedies in any event. [Filing No. 56 at 3-4.]

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). "[A] prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Because exhaustion is an affirmative defense," Defendants must show that "an administrative remedy was available and that [Mr. Love] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

Nurse Enriquez has met her burden of proving that Mr. Love "had available [administrative] remedies that he did not utilize." *Dale*, 376 F.3d at 656. The only allegations Mr.

11

Love sets forth regarding Nurse Enriquez relate to the June 23, 2024 incident where Correctional Officer Leitz allegedly poured hot coffee on Mr. Love. Specifically, Mr. Love alleges that he "reported to Nurse [Enriquez] [he] had an injury from a C/O who poured hot coffee on [him] and [he] needed medical treatment," and "Nurse [Enriquez] took [his] HCRF #9551415 and told [him] she would get [him] some ice to put on it but she never did nor came back to pull [him] out the cell concerning [his] injury." [Filing No. 1 at 10.]

The only grievance that arguably addresses actions taken by Nurse Enriquez in connection with the June 23, 2024 incident is Grievance # 24-182091.[4] [*See* Filing No. 55 at 40.] It is the only grievance in which Mr. Love mentions her. [Filing No. 55 at 40 (Mr. Love stating "HCRF # 551415 – showed nurse Emily during med pass 9:50 pm").] But Mr. Love does not complain about care that Nurse Enriquez provided and, instead, only mentions that he "showed nurse Emily during med pass," possibly referring to showing her his burn from the hot coffee. [Filing No. 55 at 40.] The crux of Grievance # 24-182091 is Mr. Love's allegation that Correctional Officer Leitz poured hot coffee on him and to the extent that Mr. Love also wanted to grieve Nurse Enriquez's treatment of his resulting burn, the IDOC Manual of Policies and Procedures required him to file a separate grievance as to that treatment. [*See* Filing No. 45-1 at 9 (providing that each Offender Grievance "shall relate to only one event or issue").] Grievance # 24-182091 does not sufficiently address any actions by Nurse Enriquez, so Mr. Love has failed to exhaust his administrative remedies as to any claims based on those actions.

---

[4] Mr. Love's first two grievances – Grievance # 24-177591 (filed on April 25, 2024) and Grievance # 24-178308 (filed on May 1, 2024) – were both filed before the June 23, 2024 incident and do not mention Nurse Enriquez, and Grievance # 24-183283 (filed on July 2, 2024) relates to Mr. Love being charged a co-pay for a medical visit and also does not mention Nurse Enriquez.

Further, even if Mr. Love adequately included Nurse Enriquez's actions in Grievance # 24-182091, he did not initiate his second-level appeal until July 24, 2024, [Filing No. 55 at 45], five days after he initiated this litigation, [Filing No. 1]. He admits in his Complaint that he "is in the process of exhausting his administrative remedies…regarding [Grievance #] 24-182091." [Filing No. 1 at 12.] Because he did not wait to file this lawsuit until after completing the appeal process as to Grievance # 24-182091, he failed to exhaust his administrative remedies as to any claims related to that grievance in any event.

In short, Mr. Love did not complete the available administrative process as required by the PLRA before asserting his Eighth Amendment claim against Nurse Enriquez in this lawsuit. *Reid*, 962 F.3d at 329. The consequence of his failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that his Eighth Amendment claim against Nurse Enriquez must be dismissed without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice") (emphasis omitted). The Court **GRANTS** Nurse Enriquez's Motion for Summary Judgment, [Filing No. 44], and **DISMISSES** Mr. Love's claim against Nurse Enriquez **WITHOUT PREJUDICE**.

### IV.
### Conclusion

For the foregoing reasons, the Court **GRANTS** Nurse Enriquez's Motion for Summary Judgment, [44], and **DISMISSES** Mr. Love's claim against Nurse Enriquez **WITHOUT PREJUDICE**. The **CLERK** is **DIRECTED** to **TERMINATE** Nurse Emily Enriquez as a party in this case. No partial final judgment shall issue.

Date: 6/27/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution to:**

Joshua D. Love
#121292
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only